| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER, STATE OF COLORADO.<br><br>Court Address:<br>1777 Sixth Street<br>Boulder, Colorado 80302 | DATE FILED: December 7, 2017 4:37 PM<br>FILING ID: DB96E85A9304F<br>CASE NUMBER: 2017CV31206 |
| Plaintiff: **ROBERT BALLARD,**<br><br>v.<br><br>Defendants: **PRAETORIAN INSURANCE COMPANY.** | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiff:<br>Robert D. Wilhite, Esq.<br>Sandra L. Hagen, Esq.<br>Sawaya, Rose, McClure & Wilhite, P.C.<br>1600 Ogden Street<br>Denver, CO 80218<br>Phone Number:   (303) 839-1650<br>FAX Number:     (303) 832-7102<br>E-mail:  rwilhite@sawayalaw.com; shagen@sawayalaw.com<br>Atty. Reg. #:  36245, 43080 | Case Number:<br><br><br>Div.:         Ctrm: |
| **COMPLAINT** ||

Plaintiff Robert Ballard (hereinafter "Plaintiff"), by and through his attorneys, Sawaya, Rose, McClure & Wilhite, P.C., files his Complaint against Defendant Praetorian Insurance Company and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. On or about February 4, 2014, the date of the incident complained of, Plaintiff Robert Ballard was a resident of Denver County, State of Colorado.

2. At all times material, Defendant Praetorian Insurance Company, d/b/a Deep South Insurance Services, (hereinafter Praetorian), was authorized to do, and is doing business in the State of Colorado.

3. Jurisdiction and venue are proper in this action pursuant to C.R.C.P. 98(c)(1).

### GENERAL ALLEGATIONS

4. On or about February 4, 2014, Plaintiff was involved in a motor vehicle collision at 1033 Buffalo Ridge Road, City of Castle Rock, County of Douglas, State of Colorado, with underinsured motorist Hugo Topete.

5. On or about February 4, 2014, Plaintiff was dispatched by his employer, American Automobile Association (AAA), to 1033 Buffalo Ridge Road, City of Castle Rock, County of Douglas. Plaintiff parked his vehicle in front of the residence against the curb facing northwest. Plaintiff exited his vehicle and was standing behind the passenger side rear quarter panel as underinsured Topete traveled southeast towards Plaintiff, rounded the curve of Buffalo Ridge Road, and lost control his vehicle. Underinsured Topete's vehicle slid down the hill of Buffalo Ridge Road towards Plaintiff's vehicle, spun sideways, and collided with Plaintiff's parked vehicle with such force that Plaintiff had to jump out of the way to avoid being struck by his own parked vehicle. Plaintiff, as a result of jumping out of the way from being struck from his parked vehicle, injured his right knee.

6. Upon information and belief, following the subject motor vehicle collision, Plaintiff presented to the Concentra Medical Centers with complaints of right knee pain. Subsequent diagnostic imaging revealed acute, complete disruption of the proximal fibers of the anterior cruciate ligament, acute uncomplicated osteochondral contusions in the proximal tibia and moderate joint effusions with horizontal and longitudinal tearing of the posterior horn of the medial meniscus. Plaintiff followed up with John Papilion, M.D., who assessed Plaintiff with complete tear of the anterior cruciate ligament, complex horizontal tear of the posterior horn of the medial meniscus, and deep bone bruise and micro-fracture of the posterior-lateral tibial plateau. As result, Plaintiff underwent arthroscopic chondroplasty of the patella, arthroscopic medial meniscal repair and arthroscopic-assisted anterior cruciate ligament reconstruction with anterior tibialis allograft. To date Plaintiff has been unable to return to his original employment he held at the time of the subject incident and is unable to meet the physical demands of similar employment as a result of injuries sustained from the subject motor vehicle collision.

7. On the date of the above-referenced motor vehicle collision underinsured motorist Hugo Topete operated his motor vehicle negligently, recklessly, carelessly, and in disregard for the traffic regulations then in effect, the traffic conditions then encountered, and the rights and safety of Plaintiffs and the public at large.

8. On the date of the above-referenced motor vehicle collision Plaintiff's motor vehicle was parked at 1033 Buffalo Ridge Road, City of Castle Rock, County of Douglas.

9. Plaintiff was not negligent in the above-referenced motor vehicle collision.

10. No third party caused or contributed to the cause of the above-referenced motor vehicle collision, and/or Plaintiff's injuries, damages and losses.

11. Plaintiff has not failed to mitigate his damages from the above-referenced motor vehicle collision.

12. To the extent that Plaintiff suffered from any pre-existing physical condition, that condition is not relevant to any legitimate issue to be adjudicated herein.

13. Plaintiff has not been injured in an unrelated matter subsequent to the above-referenced motor vehicle collision.

14. As a result of the above-referenced motor vehicle collision, Plaintiff sustained injuries.

15. As a direct and proximate result of the above-referenced motor vehicle collision, Plaintiff has suffered traumatic physical, and/or emotional, and/or psychological injuries, and/or disabilities and/or economic losses and injuries which injuries, damages and losses are permanent in nature and which losses Plaintiff has suffered in the past and will suffer in the future.

16. As a direct and proximate result of the above-referenced motor vehicle collision, Plaintiff will be prevented from engaging in certain social and recreational activities normal to his lifestyle prior to the incident of February 4, 2014, and will otherwise be prevented from participating in and enjoying benefits of a full and complete life.

17. Plaintiff settled with the bodily injury insurance carrier, Progressive Insurance, on behalf of underinsured motorist Hugo Topete, on May 6, 2016.

18. At the time of the above-referenced motor vehicle collision, Plaintiff's employer, American Automobile Association (AAA), had automobile insurance coverage in full force and effect that was provided to Plaintiff via employment, and was insured by Defendant Praetorian for underinsured motorist coverage.

19. On May 31, 2016, Counsel for Plaintiff sent Defendant a Demand letter with supporting documents. On June 23, 2016, Counsel for Defendant responded and sent a letter that requested that Plaintiff undergo both an independent medical evaluation and a vocational rehabilitation examination. On June 29, 2016, Counsel for Plaintiff agreed and confirmed availability for the independent medical evaluation; scheduled for August 17, 2016. Counsel for Plaintiff also requested the contractual legal authority from Defendant's insurance policy setting forth the requirement for a vocational rehabilitation examination.

20. June 30, 2016, Counsel for Plaintiff emailed Counsel for Defendant a request for mediation availability. July 14, 2016, Counsel for Plaintiff emailed Defendant twice regarding mediation availability. July 21, 2016, Counsel for Plaintiff emailed Defendant a third time regarding mediation availability. On July 28, 2016, Counsel for Plaintiff sent a letter to Defendant regarding mediation availability. On August 5, 2016, Counsel for Plaintiff mailed a second letter to Defendant requesting mediation availability.

21. On August 17, 2016, Plaintiff attended the independent medical evaluation with Dr. Henry Roth. On August 18, 2016, Counsel for Defendant sent a letter detailing a vocational rehabilitation specialist had been hired by Defendant and dates of availability

3

were pending. On August 19, 2016, Counsel for Plaintiff requested Defendant disclose the vocational rehabilitation expert they had hired. Counsel for Plaintiff also requested that if the vocational rehabilitation expert is not a physician, to please send the contractual legal authority for Defendants vocational rehabilitation examination request.

22. On September 8, 2016, Counsel for Plaintiff sent a letter to Defendant requesting if mediator Collie Norman was mutually agreeable. Counsel for Plaintiff reiterated the previous request for Defendant to provide contractual legal authority for the vocational rehabilitation examination request. On September 16, 2016, Counsel for Plaintiff sent a second letter to Counsel for Defendant requesting the status of an agreeable mediator. Counsel for Plaintiff also reiterated for Defendant to disclose contractual legal authority regarding the vocational rehabilitation examination request. On September 20, 2016, Counsel for Defendant confirmed mediator Collie Norman was acceptable. Counsel for Defendant disclosed Margo Burns as the vocational rehabilitation examiner and provided her availability for examination. Counsel for Defendant also stated "there is no specific language in the Praetorian policy language regarding an insured meeting with a vocational rehabilitation specialist." Counsel for Defendant then requested Plaintiff schedule and undergo a repeat EMG study. On September 21, 2016, Counsel for Plaintiff sent Defendant a letter disputing the contractual legal authority for Plaintiff to attend the vocational rehabilitation examination. Mediation was scheduled on this date with mediator Collie Norman at Judicial Arbitration Mediation Services (JAMS).

23. On October 26, 2016, Counsel for Plaintiff sent a letter to Defendant declining the vocational rehabilitation examination. Counsel for Plaintiff accepted Defendant's request for a repeat EMG study by a physician from their choice. On November 8, 2016, Counsel for Defendant sent a second letter reiterating the request for Plaintiff to attend a vocational rehabilitation examination with Margo Burns.

24. On December 5, 2016, Counsel for Plaintiff sent a letter requesting the insurance policy language of Defendant Praetorian requiring Plaintiff submit to a vocational rehabilitation examination. Counsel for Plaintiff agreed to arbitration with the stipulation that arbitration was conducted for the entire matter, not the single UIM claim. On December 20, 2016, Counsel for Plaintiff sent a second letter to Defendant that reiterated the request for the insurance policy language of Defendant Praetorian which required Plaintiff undergoes a vocational rehabilitation examination.

25. On January 20, 2017, Counsel for Plaintiff sent a third letter that reiterated the request for the insurance policy language of Defendant Praetorian which required Plaintiff to undergo a vocational rehabilitation examination. Counsel for Plaintiff also reiterated that arbitration is agreeable on the stipulation it is for the entire matter, not the single UIM claim. On February 3, 2017, Counsel for Defendant sent a response letter that cited the November 8, 2016, letter which detailed Praetorian Insurance Company's position regarding the request for Plaintiff to be interviewed by vocational rehabilitation examiner Margo Burns.

26. On May 2, 2017, Counsel for Plaintiff sent Defendant a letter and cited the contractual policy language previously provided by Defendant that indicated the insured is to "submit to examination, at our expense, by physicians of our choice." Counsel for Plaintiff responded and stated Margo Burns is not a physician and opined that reliance on this clause in the insurance contract does not require Plaintiff to submit to a vocational rehabilitation examination. Counsel for Plaintiff reiterated that arbitration involve all claims, including claims for bad faith and breach of contact. On May 23, 2017, Counsel for Plaintiff sent Defendant a follow up letter reiterating the positions of both the vocational rehabilitation examination and arbitration. Counsel for Plaintiff stated Plaintiff would undergo the requested vocational rehabilitation examination with Margo Burns, in good faith, on the stipulation that there will be no additional examination of this type; specifically prohibiting a Rule 35 Examination should suit be filed.

27. On June 26, 2017, Counsel for Plaintiff sent Defendant a second letter that reiterated the positions of both the vocational rehabilitation examination and arbitration. On July 12, 2017, Counsel for Plaintiff sent a third letter to Defendant that reiterated the positions of both the vocational rehabilitation examination and arbitration. On August 2, 2017, Counsel for Plaintiff sent a fourth letter to Defendant that reiterated the positions of both the vocational rehabilitation examination and arbitration.

28. On August 10, 2017, Counsel for Plaintiff sent a letter to Defendant confirming the vocational rehabilitation examination for August 16, 2017, at 1:00 p.m. Plaintiff attended said examination.

29. On September 22, 2017, Counsel for Plaintiff sent a letter to Defendant that requested a copy of the vocational rehabilitation examination report. On November 8, 2017, Counsel for Plaintiff sent a second letter to Defendant that requested a copy of the vocational rehabilitation examination report. To date Counsel for Plaintiff has yet to receive the report.

30. Plaintiff has filed an underinsured motorist claim with Defendant Praetorian who has failed to make any payments regarding his injuries.

### FIRST CLAIM FOR RELIEF
### ALLEGATIONS OF BREACH OF CONTRACT/ UNDERINSURED/UNDERINSURED MOTORIST COVERAGE BY PRAETORIAN INSURANCE COMPANY

31. Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1 through 30 above.

32. At all times material hereto, and at the time of the incident complained of, the Defendant Praetorian was a domestic corporation, authorized to do and doing business in the State of Colorado, with its registered agent as the Division of Insurance.

5

33. At all times material hereto, and at the time of the incident complained of, the Plaintiff was insured under a statutorily complied Colorado auto insurance policy issued by Defendant Praetorian.

34. Upon information and belief, said policy contained within it a "direct action clause and/or in the alternative provided for the filing of this action."

35. Plaintiff's insurance policy provided for underinsured and underinsured benefits to be made available to Plaintiff which policy is believed to be in the possession of the Defendant Praetorian and which policy was in full force and effect on the date of the motor vehicle collision.

36. At all times material hereto, and at the time of the incident complained, said insurance policy was in full force and effect and provided for underinsured and underinsured motorist benefits to Plaintiff.

37. During the duration of this clause, contract, and/or policy, the subject vehicle collision occurred with resulting injuries as set forth herein.

38. The subject collision gives rise to the payment of benefits for injuries suffered in the collision caused by Hugo Topete.

39. When and at such time as an insured such as Plaintiff is injured by the negligent conduct of said driver, which constitutes conduct for which underinsured and/or underinsured benefits are applicable to this cause.

40. As of the time of filing this complaint, Defendant Praetorian has failed and/or refused to pay reasonable covered benefits pursuant to the underinsured/underinsured benefits available and as such has required the filing of this action.

41. Further, during the duration of the clause, contract, and/or policy of insurance providing Plaintiff with underinsured/underinsured benefits, and on the date of the incident complained of, Hugo Topete, which driver is deemed an underinsured motorist, did so carelessly and negligently operate his motor vehicle so as to collide with great force and violence against a vehicle lawfully operated in which Plaintiff was a driver.

42. Hugo Topete's negligence and actions were the direct and proximate cause of severe, permanent, and disabling injuries of body, mind, psyche, economic and noneconomic losses, and physical impairment as are herein after further described.

43. At all times material hereto and at the time of the incident complained of, the Plaintiff, as the driver of the vehicle operated in a reasonable and safe fashion, such that the Plaintiff did not cause or contribute to cause the motor vehicle collision. As such, the Plaintiff committed no violation of law or act of negligence and is in no matter guilty of negligence or comparative negligence.

## SECOND CLAIM FOR RELIEF
## (BAD FAITH BREACH OF INSURANCE CONTRACT)

44. Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1 through 43 above.

45. As a provider of insurance Company to the public, Defendant at all times had a duty to act in good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

46. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing, Defendant owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to their own interests.

47. Defendant has breached its duty of good faith and fair dealing owed to Plaintiff, including but not limited to:

    a. Failing to give equal consideration to the interest of Plaintiff, its insured;

    b. When investigating Plaintiff's claims, failing to diligently search for evidence that supported their insured's (Plaintiff's) claims;

    c. Seeking to discover only evidence that defeated their insured's (Plaintiff's) claims;

    d. Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of a lack or reasonable basis for delaying and/or withholding benefits;

    e. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

    f. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    g. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;

    h. Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;

    i. Forcing Plaintiff into the costly and lengthy process of litigation;

7

       j.    Any further acts which may be discovered.

48. Defendant's aforesaid conduct was unreasonable and Defendant either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

49. As a direct and approximate result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has sustained damages in the amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
### (VIOLATION OF C.R.C.P. 10-3-1115(1)(A) AND C.R.C.P. 10-3-1116(1))

50. Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1 through 49 above.

51. Defendant violated C.R.S. § 10-3-1115 by failing to make a reasonable offer.

52. Defendant violated C.R.S. § 10-3-1115 by denying a covered benefit to Plaintiff without a reasonable basis for denial.

53. As a result of this delay in making reasonable offer, Plaintiff is entitled to recover reasonable attorney fees and court costs and two times the covered benefit pursuant to C.R.S. § 10-3-1116(a).

## Plaintiff demands a trial by jury

**WHEREFORE**, Plaintiffs request that judgment be entered in favor of the Plaintiff and against the Defendants, in an amount to fairly compensate him for the injuries as set forth above, court costs, attorney fees, expert witness fees, statutory interest from the date this cause of action accrued or as otherwise permitted under Colorado law and for such other and further relief as this Court deems just and proper and / or Plaintiffs pray for the following relief:

(a) For an amount which will reasonably compensate the Plaintiff for past, present and future economic loss;

(b) For an amount which will reasonably compensate the Plaintiff for medical expenses, past and future;

(c) For an amount which will reasonably compensate the Plaintiff for permanent impairment, injuries, and/or disfigurement, limitations and or disabilities of the body and/or mind;

(d) For an amount which will reasonably compensate the Plaintiff for pain and suffering, past and future;

(e) For an amount which will reasonably compensate the Plaintiff for loss of enjoyment of life and / or the capacity of life and an amount reasonably calculated to compensate for past and future medical care.

|     |     |
| --- | --- |
| (f) | For interest as provided by Statute from the date of the collision which forms the basis of the complaint to the date of verdict or judgment, and for costs and fees incurred in the prosecution of the matter and for any other and further relief as the Court may deem just and appropriate. |
| (g) | For any other and all fees, costs, benefits, and damages incorporated above as provided by law. |
| (h) | For any and all fees, costs, benefits and damages provided by statute. |

Respectfully submitted this 7th day of December 2017.

SAWAYA, ROSE, MCCLURE & WILHITE, P.C.

By:*/s/ Robert D. Wilhite*
*This pleading was filed electronically pursuant to Rule 121 § 1-26 Original signed pleading is on file in counsel's office*

Plaintiff's Address:
17012 Foxton Drive
Parker, CO 80134

9